[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
John Raytar, the plaintiff, is a truck driver employed by ABF Freight Corporation(ABF). He claims to have been very seriously injured on September 10, 1992 while unloading from his truck kennel fencing manufactured by the defendant, Mason Fence Co.(Mason), and shipped by them to a veterinary clinic in Prospect, via ABF. Mason had loaded the fence sections onto the truck at its facility in Ohio, and Mr. Raytar claims damages for its negligence in loading the truck in an unsafe manner. His employer, ABF, has intervened because of its payment of worker's compensation benefits to Mr. Raytar.
Mason filed a counterclaim in two counts against ABF, seeking indemnification. It alleged that ABF is a common carrier for hire and "subject to the laws and regulations pertaining to the carriage of goods", that it "delivered to" ABF a load of kennel fencing, and that Mr. Raytar's injuries were the result of ABF's negligence in failing to inspect or negligently inspecting the load to ensure that it was safely loaded before accepting it for transportation. Mason's counterclaim alleges all the elements of an indemnity claim established by Kaplan v.Merberg Wrecking Co., 152 Conn. 405, 416 (1965). Further, it alleges that ABF had a "duty to inspect the load and to decline it if it was improperly loaded". The difference between Mason's first and second counts is that the former seeks indemnity based CT Page 855 on ABF's alleged active negligence, while the second relies on an implied contractual indemnity, based on the bill of lading and the "terms incorporated by reference therein."
ABF has moved for summary judgment based on the exclusivity provision of the worker's compensation statute, Sec. 31-284a, C.G.S., and claiming that it had no independent duty to Mason that would satisfy the Supreme Court's decision in Ferryman v.Groton, 212 Conn. 138 (1989).
 Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Conn. Practice Book § 384; Suarez v. Dickmont Plastics Corp. , 229 Conn. 99, 105, 639 A.2d 507 (1994); Telesco v. Telesco, 187 Conn. 715, 447 A.2d 752 (1982); Yanow v. Teal Industries, Inc., 178 Conn. 262, 422 A.2d 311 (1979). A "material" fact is one which will make a difference in the outcome of the case. Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431, 362 A.2d 857 (1975).
 The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowling v. Kielak, 160 Conn. 14, 273 A.2d 716 (1970); Dorazio v. M.B. Foster Electronic Co., 157 Conn. 226, 253 A.2d 22 (1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 780-81, 595 A.2d 334 (1980).
Massaro v. Turpin, Superior Court, Judicial District of New Haven, Docket No. 348658 (Nov. 5, 1996).
The "material" fact here is whether there was the type of independent legal relationship between ABF and Mason that would give rise to a duty to Mason on ABF's part, independent of its duty to its employee, Mr. Raytar. Is there a "genuine issue" as CT Page 856 to the existence of such a duty, or is ABF entitled to judgment as a matter of law?
Ferryman makes clear that the "independent, legal duty" necessary to support a third party's claim against an employer may be one expressly assumed by the employer or may be implied from the relationship between the two. Supra, 145-46. It cites with approval the following, from a commentator on worker's compensation law:
 (I)f the employer can be said to have breached an independent duty toward the third party, or if there is a basis for finding an implied promise of indemnity, recovery in the form of indemnity may be allowed. 2A A. Larson, Workmen's Compensation Law, Sec. 76.
Indeed, in Ferryman, itself, the independent duty of the third party defendant to the town of Groton was found to exist not in any agreement between the two but from the facts alleged in the third party complaint about their respective roles in the operation of the electrical substation where the plaintiff was injured. Id.
That ABF and Mason have an independent legal relationship is clear beyond question. They have a contractual relationship, as evidenced by the bill of lading, for ABF to transport kennel fencing from Ohio to Connecticut. The question is, Does that relationship impose on ABF a duty to Mason to ensure that the load transported is safely loaded and secured?
 The important principle is whether the employer has imposed on itself through contract or has imposed on it by statute an independent legal duty to the third party apart from any claim by a third party that the employer should be held responsible for its active negligence in causing the injury to the employee.
Bremseth v. Conn. Light and Power Co., Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 526545 (Aug. 31, 1995).
Although judges of the Superior Court have addressed many different types of relationships to determine whether they impose an independent duty of indemnification, the parties CT Page 857 herein have cited no cases dealing with the relationship between a shipper and a common carrier, and my research has not turned up any such cases. Therefore, this issue may be one of first impression in Connecticut.
The United States Court of Appeals for the Fourth Circuit, however, spelled out the "rights and liabilities inherent in the carrier-shipper relationship . . . in the interstate transaction upon which they were engaged. These rights and liabilities are fixed by the Acts of Congress, the terms of the contract contained in the bill of lading, and the rules of the common law which are recognized by the federal courts." U.S. v. SavageTruck Line, 209 F.2d 442, 445 (1953).
Those rights and liabilities have been summarized as follows. First, both at common law and pursuant to federal statutes and regulations, the carrier has the primary responsibility to see that goods are safely loaded. See Annot., 44 A.L.R. 993, 999 (1955), and cases cited therein. For example, a federal regulation provides that, "no motor vehicle shall be driven nor shall any motor carrier permit or require any motor vehicle to be driven . . . if the load thereon is so improperly distributed or so inadequately secured, as to prevent its safe operation". 49 C.F.R. § 192.9 (a). When the shipper assumes the responsibility to load the goods, however, the duty of the carrier is limited. The carrier's duty in that situation is to inspect the load and correct any "patent" defects, i.e., defects apparent upon ordinary observation. Id., 1001. The carrier has the duty to refuse the shipment if its observation shows it to be improperly loaded. Id., 1002.
 When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discovered by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper. This rule is not only followed in cases arising under the federal statutes by decisions of the federal courts but also for the most part by the decisions of the state courts.
U.S. v. Savage Truck Line, supra. (Citations omitted.) Applying this rule, the court in Savage required the carrier to reimburse the shipper, the United States, not only for damage to CT Page 858 the contents of the load but also for the damages it paid to the family of a deceased victim of a collision caused by the improper loading of the carrier's truck by agents of the shipper.
Sometimes this liability is imposed as a contractual indemnity, as in General Electric Co. v. Moretz, 270 F.2d 780 (4th Cir., 1959). The bill of lading operates as a contract between the shipper and the carrier and "is controlled by federal statutes and the decisions construing them". 13 Am.Jur.2d, Carriers sec. 278 (1964).
 A bill of lading is a contract within the meaning of the rule that the laws in force at the time and place of the making of a contract and which affect its validity, performance, and enforcement, enter into and form a part of it as if they were expressly referred to or incorporated in its terms. Id.
See Northern Pacific R. Co. v. Wall, 241 U.S. 87, 92 (1916). This approach is consonant with Connecticut law, see Hatcho Corp. v.Della Pietra, 195 Conn. 18, 21 (1985), and is not inconsistent with cases such as Burkle v. Car and Truck Leasing Co., 1 Conn. App. 54,56 (1983), which deal with the interpretation of written contracts not the incorporation of federal laws and regulations in a document evidencing an agreement for the transport of goods in interstate commerce.
The court in Moretz held that the shipper was entitled to indemnity from the carrier for injuries suffered by the truck driver, and that its right was not barred by the worker's compensation law.
Or, as in Savage Truck Line, supra, the carrier's duty is imposed in the context of the "act of the shipper" exception to the general rule that the carrier bears the primary responsibility for safe loading. Thus, in Franklin Stainless Corp. v. MarloTransport Corp. , 748 F.2d 865, 869 (4th Cir., 1984), the court cited the carrier's "duty with regard to a shipper, who has assumed the responsibility for loading, . . . to exercise reasonable care to see that the load is properly secured". The court denied indemnity because the evidence at trial showed that the defect in loading was not "open and obvious". Id.
Even in a case that called into question the reasoning of both Moretz and Savage Truck Line the court concluded that, as between the carrier and the shipper, "the carrier has a duty to CT Page 859 make a reasonable inspection and to observe and correct defects or insecurities in loading that are capable of being discovered in the course of a reasonable inspection". Georgia Kraft Co. v.Terminal Transport Co., 343 F. Sup. 1240, 1248 (E.D.Tenn., 1972). Having previously held that the shipper's suit against the carrier for indemnification for damages paid to the latter's driver was not barred by the exclusivity provision of the state worker's compensation law, id., 1244, the court denied recovery only because the evidence at trial established that the defects in the shipment were latent, "which the defendant's driver might not reasonably be expected to have observed or anticipated".Id., 1248.
This case has been a source of great controversy between the counterclaim parties. It should be pointed out, first, that it is the decision of one District Court judge which, while entitled to respect, has no controlling effect. Second, it is true that the court's decision as to exclusivity is limited to the facts of that case, where the shipper's claim was one of contractual indemnity; the decision in this case, however, must be based upon Connecticut law, which allows recovery by a third party when the independent relationship is one expressly assumed or implied from the relationship of the parties. Third, nothing in the court's opinion indicates that its recognition of the carrier's duty is limited to cases of express or implied contractual indemnity. Rather, the court recognizes and examines the implications of such a duty only after it has expressed its "reservations" about the contractual indemnity claim of the shipper.
Whether a defect in loading is latent or patent, obvious or concealed, is clearly a question of fact. For this reason the District Court in Ebasco Service, Inc. v. Pacific IntermountainExpress, 398 F. Sup. 565 (S.D.N.Y., 1975), denied a motion for summary judgment. It cited Savage Truck Line as reflecting the common law rule regarding the relative responsibilities of shippers and carriers and found that the "question of whether the defect here was patent is . . . not one for resolution by summary judgment". Id., 568.
ABF also argues that the injury alleged to have occurred here was not while the load was in transit but when it was being unloaded. It cites no cases to support its implied argument that it makes a difference. Indeed, it would appear that a carrier has a duty to a consignee and its employee similar to CT Page 860 the duty imposed by the cases cited above; viz., to make an exterior inspection to discover patent defects in loading by the shipper and correct them or warn the consignee so that the load is reasonably safe for unloading. Annot., 29 A.L.R.3d 1038 (1970), and cases cited in the supplement thereto.
The counterclaim in this case certainly contains factual allegations supporting an indemnification claim under either the implied contract approach or the "act of the shipper" exception to the general rule as to the carrier's liability for unsafe loading. It specifically alleges that ABF is subject to the laws and regulations pertaining to the carriage of goods, and that it had a duty to inspect the load and decline it if it was improperly loaded. Its allegations of negligence on ABF's part mirror the responsibilities a carrier has under the common law when the shipper, as here, loads the goods. Under its counterclaim it will be a question of fact for the jury whether the load of fencing was improperly loaded and secured in the trailer and, if it was, whether ABF knew or should have known if it was improperly loaded and secured. While ABF has attached an affidavit and deposition excerpts to support its claim that there is no genuine issue of material fact, Mason has responded in kind. None of the claims of ABF as to its supporting evidence disposes of the only question before me; viz., whether it had an independent duty to Mason, not whether it violated that duty.
 "The party moving for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which under applicable principles of substantive law, entitled him to judgment as a matter of law. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Dougherty v. Graham, 161 Conn. 248, 250, 287 A.2d 382
(1971).
Fogarty v. Rashaw, 193 Conn. 442, 445 (1984).
Construing the counterclaim "broadly and realistically, not narrowly and technically", as is the practice in Connecticut,Beaudoin v. Town Oil Co., 207 Conn. 575, 587-88 (1988), there are sufficient allegations in it which, if proven, would establish a duty to Mason on the part of ABF, arising out of CT Page 861 their relationship as shipper and carrier, respectively, and entirely independent of ABF's duty to its employee, Mr. Raytar. Accordingly, ABF's motion for summary judgment is denied.
SHORTALL, J.